UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

WILLISTINE S.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,[1]

        Defendant.

1:20-cv-05501-NLH

**OPINION**

---

**APPEARANCES**:

JENNIFER L. STONAGE
RICHARD LOWELL FRANKEL
BROSS & FRANKEL, PA
725 KENILWORTH AVE
CHERRY HILL, NJ 08002

    *On behalf of Plaintiff*

HEATHER A. BENDERSON
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the United States Social Security Administration.

Insurance Benefits ("DIB")[2] and Supplemental Security Income ("SSI")[3] under Title II and Title XVI of the Social Security Act.[4]  42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled as of October 1, 2013.  For the reasons stated below, this Court will reverse that decision and remand the matter for further consideration consistent with this Opinion.

---

[2] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[3] Supplemental Security Income is a program under the Social Security Act that provides supplemental security income to individuals who have attained age 65, or are blind or disabled. 42 U.S.C. § 1381 et seq.

[4] The standard for determining whether a claimant is disabled is the same for both DIB and SSI.  See Rutherford v. Barnhart, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). DIB regulations are found at 20 C.F.R. §§ 404.1500-404.1599, and the parallel SSI regulations are found at 20 C.F.R. §§ 416.900-416.999, which correspond to the last two digits of the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20 C.F.R. § 416.945).  The Court will provide citations only to the DIB regulations.  See Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Willistine S., protectively filed[5] an application for SSI and DIB on December 1, 2015,[6] alleging that as of October 1, 2013, she can no longer work as a housekeeper because of her impairments of hypothyroidism, sleep apnea, depression, uveitis, and degenerative joint disease.[7]

After Plaintiff's claim was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ,

---

[5] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits.  That date may be earlier than the date of the formal application and may provide additional benefits to the claimant.  See SSA Handbook 1507; SSR 72-8.

[6] Even though Plaintiff contends that her onset date of disability is October 1, 2013, the relevant period for Plaintiff's SSI claim begins with her December 1, 2015 application date, through the date of the ALJ's decision on January 16, 2019.  See 20 C.F.R. § 416.202 (claimant is not eligible for SSI until, among other factors, the date on which he or she files an application for SSI benefits); 20 C.F.R. § 416.501 (claimant may not be paid for SSI for any time period that predates the first month he or she satisfies the eligibility requirements, which cannot predate the date on which an application was filed).  This difference between eligibility for SSI and DIB is not material to the Court's analysis of Plaintiff's appeal.

[7] Plaintiff was 56 years old on her alleged disability onset date.  Plaintiff was 61 years old at the time of the hearing before the ALJ.  Plaintiff's age renders her "advanced age" under the Social Security regulations. See 20 C.F.R. § 404.1563(e) ("We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work. We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60 or older).").

3

which was held on October 2, 2018. On January 16, 2019, the ALJ issued an unfavorable decision. Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on February 28, 2020, making the ALJ's decision final. Plaintiff brings this civil action for review of the Commissioner's decision.

**II. DISCUSSION**

    **A. Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen,

4

845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all

5

> evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

    **B.    Standard for DIB and SSI**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable

6

physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[8] for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a

---

[8] Various provisions of the regulations were amended effective March 27, 2017.  See 82 F.R. 5844.  The parties do not argue that any of these amendments are relevant to Plaintiff's appeal.

7

>                continuous period of at least twelve months, the
>                claimant will be found "disabled."
>
>          4.    If the claimant can still perform work he has done in
>                the past ("past relevant work") despite the severe
>                impairment, he will be found "not disabled."
>
>          5.    Finally, the Commissioner will consider the claimant's
>                ability to perform work ("residual functional
>                capacity"), age, education, and past work experience
>                to determine whether or not he is capable of
>                performing other work which exists in the national
>                economy.  If he is incapable, he will be found
>                "disabled."  If he is capable, he will be found "not
>                disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

8

**C.   Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  At step two, the ALJ found that Plaintiff's impairments of hypothyroidism, sleep apnea, and depression were severe.  At step three, the ALJ determined that Plaintiff's severe impairments or her severe impairments in combination with her other impairments did not equal the severity of one of the listed impairments.  The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels,[9] with certain non-exertional restrictions.  At steps four and five, the ALJ determined that Plaintiff was capable of performing her past work as a housekeeper, as well as perform other jobs in the national economy, such as a laundry sorter, photocopying machine operator, and lens matcher.  The ALJ therefore concluded that Plaintiff was not disabled.

Plaintiff argues that the ALJ erred in her decision because she failed to consider Plaintiff's medically determinable impairments of Lyme disease, bilateral degenerative joint disease of the hips and knees, and uveitis[10] as severe at step

---

[9] 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

[10] According to Plaintiff's brief, "Uveitis is a form of eye

9

two, and the ALJ further failed to incorporate limitations consistent with those impairments in her RFC assessment.[11] Although the Court does not find error in the ALJ's step two analysis, the Court agrees that the ALJ erred in her RFC determination by failing to account for these impairments.[12]

"The severity test at step two is a '*de minimis* screening device to dispose of groundless claims.'" McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360-61 (3d Cir. 2004) (citation omitted). Step two is not a high hurdle for an applicant, but she must demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." McCrea v. Commissioner of Social Sec., 370 F.3d 357, 360 (3d Cir. 2004) (citing SSR 85-28).

---

inflammation that affects the middle layer of the tissue in the eye wall.  Symptoms include eye redness, eye pain, light sensitivity, blurred vision, dark floating spots in the field of vision and decreased vision."  (Docket No. 13 at 7.)

[11] The RFC reflects "what [the claimant] can still do despite [his or her] limitations."  20 C.F.R. §§ 404.1545(a), 416.945(a).

[12] Plaintiff presents several other arguments on appeal.  Because the incomplete RFC determination undermines the analysis of steps four and five, see 20 C.F.R. § 416.20(b)-(f) ("[T]he Commissioner will consider the claimant's [RFC], age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy."), the Court declines to opine on the other issues raised in Plaintiff's appeal in this procedural posture.

10

As noted above, at step two, the ALJ found that Plaintiff's impairments of hypothyroidism, sleep apnea, and depression were severe. The ALJ considered Plaintiff's impairments of bilateral degenerative joint disease and uveitis to be medically determinable impairments, but the ALJ explained why she found them to be non-severe impairments because she determined that they would each independently have a minimal effect on Plaintiff's ability to work. (R. at 52.) The ALJ did not consider Plaintiff's Lyme disease at step two.

Typically when an ALJ finds that the claimant has at least one severe impairment at step two and continues onto the subsequent steps, omission of another impairment, or the determination that an impairment is not severe, is harmless error. Torres v. Commissioner of Social Security, 2018 WL 1251630, at *5 (D.N.J. 2018) (citing Richardson v. Commissioner of Social Security, 2017 WL 6550482, at *5 (D.N.J. 2017) (citing Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); Rutherford v. Barnhart, 399 F.3d 546, 552–53 (3d Cir. 2005)).

The error at step two is only harmless, however, where the ALJ has considered the medically determinable impairment in the

11


RFC determination and it would not otherwise affect the outcome of the case. *Id.* This is because the RFC assessment must take into consideration all of a claimant's medically determinable impairments in combination, including those that the ALJ has found to be severe, as well as those that the ALJ has not deemed to be severe at step two. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

Here, the Court finds that the ALJ did not err at step two, as she explained that even though Plaintiff suffered from the medically determinable impairments of degenerative joint disease and uveitis, those impairments did not meet the severity requirement of step two in that they did not "significantly limit [her] physical or mental ability to do basic work activities." *See* 20 C.F.R. § 404.1522 (defining non-severe impairments and basic work activities).

Additionally, there is very limited record evidence of Plaintiff's Lyme disease diagnosis and its limiting effects separate from the limitations she suffered from her other medically determinable severe and non-severe impairments. Thus, the Court does not find that the ALJ erred in failing to

consider Plaintiff's Lyme disease at step two.

The Court does find, however, that the ALJ erred in the RFC determination by failing to account for Plaintiff's severe and non-severe impairments in combination. It is important to recognize that the step two determination and the RFC assessment do not present the same analysis. A severe exertional impairment - established at step two - is one that significantly limits a claimant's physical ability to do basic work activities. 20 C.F.R. § 404.1522. While there is some overlap, the assessment of a claimant's exertional capacity in the RFC determination, in contrast, "addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p. An ALJ must consider each of these functions "separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours'), even if the final RFC assessment will combine activities (e.g., 'walk/stand, lift/carry, push/pull')." Id.

The ALJ found Plaintiff's RFC to be as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: She must avoid concentrated exposure to extreme heat/cold, wetness/humidity, irritants, such as fumes, odors, dust and gases, poorly ventilated areas and

13

>     chemicals. Additionally, she is limited to simple, routine
>     and repetitive tasks involving only frequent interaction
>     with the public, co- workers and supervisors.

(R. at 54.)

The ALJ's finding that Plaintiff could perform work at all exertional levels meant that Plaintiff was capable of performing "very heavy work," which "involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. § 404.1567(e). That also meant that Plaintiff could also do heavy, medium, light, and sedentary work. 20 C.F.R. § 404.1567(e). While the weight lifting and carrying requirements decrease incrementally through the exertional levels, the definition of light work provides the requirements for walking and standing, which functions are not described at the higher three exertional levels:[13] "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be

---

[13] See 20 C.F.R. § 404.1567(c) ("Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work."); 20 C.F.R. § 404.1567(d) ("Heavy work. Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.").

14

considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b). Thus, in addition to being able to lift 100 pounds, the ALJ's RFC determination found that Plaintiff was capable of these standing, walking, pushing and pulling requirements as well.

Missing from this assessment of Plaintiff's exertional abilities is the impact of Plaintiff's bilateral degenerative joint disease and uveitis on her capability to work in jobs at all exertional levels. The RFC contains no restrictions on exertional requirements, but Plaintiff's medically determinable impairments of joint disease and uveitis, while not "severe," presumably have some degree of impact on Plaintiff's RFC. Indeed, the ALJ recognized this point by stating twice, "the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some symptoms." (R. at 55, 57.) These symptoms included "Plaintiff's testimony that joint pain prevents her from sitting, standing or walking for long periods. She also indicated that she cannot reach overhead without experiencing pain. . . . [and she] has uveitis flare-ups that result in migraine headaches and burning of the eyes 3-4 times a month, lasting 3-4 days at a time." (R. at 55.) Additional medical records not recounted by the ALJ in the decision further confirm

15

that Plaintiff's degenerative joint disease and uveitis caused "some symptoms." (See Pl's Brief, Docket No. 13 at 17-18, citing medical records regarding Plaintiff's degenerative joint disease and uveitis.) Moreover, the Court notes that Plaintiff's age - 61 years old at the time of the hearing before the ALJ - is a factor the ALJ must consider when determining the exertional capabilities of a claimant. See 20 C.F.R. § 404.1563(e), *supra*, note 7.

Thus, the ALJ's failure to consider Plaintiff's degenerative joint disease and uveitis in the RFC determination is reversible error. Even though at step two the ALJ found these impairment to only "mildly" affect Plaintiff's functioning and therefore were not "severe," that finding is distinguishable from a finding that these were not medically determinable impairments at all.[14] In formulating the RFC, the regulations

---

[14] In that case, the ALJ would not be required to consider an ailment that is not medically determinable, such as Plaintiff's Lyme disease. See Diciano v. Commissioner of Social Security, 2019 WL 6696523, at *4 (D.N.J. 2019) (explaining that "[i]t is true that an ALJ must assess a claimant's severe impairments in combination with non-severe impairments," but "an ALJ does not have to consider an alleged impairment if he does not find such an impairment is medically determinable") (citing 20 C.F.R. § 404.1529; POMS, DI 25205.005 Evidence of a Medically Determinable Impairment ("A medically determinable physical or mental impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. The impairment must be established by objective medical evidence (signs, laboratory findings, or both) from an acceptable medical source, not on an individual's statement of symptoms."); 20

require the ALJ to assess Plaintiff's severe and non-severe medically determinable impairments in combination, as well as Plaintiff's advanced age.  The ALJ failed to do so.

Importantly, this Court cannot weigh the evidence or substitute its conclusions for those of the ALJ, or independently determine the impact of Plaintiff's non-severe impairments in combination with her severe impairments on her RFC.[15]  Without the ALJ performing that analysis, this Court cannot determine whether the ALJ's decision is supported by substantial evidence.  Consequently, the matter must be remanded for further proceedings so that the ALJ may properly consider how Plaintiff's non-severe impairments affect her RFC and her capability to perform past relevant work and other work that exists in the national economy.[16]

---

C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

[15] See Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (explaining that the pinnacle legal principal that applies to the assessment of all of the other standards: A district court is not empowered to weigh the evidence or substitute its conclusions for those of the ALJ).

[16] When an ALJ has failed to apply the correct legal standards and her conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Melkonyan v. Sullivan, 501 U.S. 89, 99 (1991) (providing that under Sentence

17

**III. Conclusion**

For the reasons expressed above, the decision of the ALJ is not supported by substantial evidence and must be reversed.  The matter shall be remanded for further consideration consistent with this Opinion.  The Court expresses no view as to whether, after a full review and explanation of the record evidence, Plaintiff should be found disabled or not under the applicable regulations.

An accompanying Order will be issued.


Date:  September 29, 2021              s/ Noel L. Hillman
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.

---

Four of 42 U.S.C. § 405(g), a court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing").  The SSA is in a better position than this Court to reassess step two, Plaintiff's RFC, and the remaining steps in the sequential step analysis.